854 So.2d 955 (2003)
Melissa Murphy LEGER
v.
James Dean LEGER.
No. 2003-419.
Court of Appeal of Louisiana, Third Circuit.
July 2, 2003.
*956 Kenneth Michael Wright, Richard D. Moreno, Ike A. Hobaugh, Wright & Moreno, L.L.C., Lake Charles, LA, for Plaintiff/Appellant Melissa Murphy Leger.
W. Thomas Barrett, III, Lake Charles, LA, for Defendant/Appellee James Dean Leger.
Court composed of BILLIE COLOMBARO WOODARD, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
WOODARD, Judge.
This appeal involves the trial court's decision, denying Melissa Leger, now Kier, to relocate with her children to Lake Jackson, Texas, where her current husband has obtained work. The children's father opposed the relocation, and the trial court ruled in his favor. We find that it erred and reverse its ruling.

* * * * *
Melissa Leger Kier appeals the trial court's denial of her motion to relocate her three minor children from Sulphur, Louisiana, to Lake Jackson, Texas.
Melissa and her husband, James Dean Leger (Dean), separated in the middle of June 2001. He obtained a judgment of divorce on February 1, 2002. The parties stipulated to a joint-custody plan, granting Melissa domiciliary status of the three children and outlining Dean's visitation schedule. Furthermore, the parties included a provision agreeing that the children's residence could not be removed to a different parish without an appropriate order of the court.
Both parties have remarried since their divorce. In July 2002, Melissa advised Dean that her current husband had obtained work in Lake Jackson, Texas, and that she intended to relocate the children there. Dean obtained a temporary restraining order on July 30, 2002, preventing her from moving the children to Texas. On August 19, 2002, she responded with a motion to dissolve the temporary restraining order and for a temporary relocation order. The matter was heard on January 21, 2003. The trial court denied Melissa's motion to relocate the children. She appeals that judgment, asserting that the trial court erred in finding that it was not in the children's best interest to relocate with her to Texas and in failing to address, with any particularity, the statutory factors applicable to the determination.

FAILURE TO ADDRESS FACTORS WITH PARTICULARITY
In Johnson v. Johnson,[1] we found that the trial court erred in failing to analyze the factors set out in the relocation statute, La.R.S. 9:355.12, even though it listed them in its reasons for judgment. The same is true in the case at bar. While the trial court listed the factors to be considered, it did not consider the factors individually concerning the particular evidence presented. It simply noted "what a heavy burden the question of relocation has on all of the parties involved," followed by a discussion of the general problems that relocation of any parent could create. It then pointed out that the children were excelling in school and stated, "This court *957 is unwilling to put the children in ANY RISK associated with a move to Lake Jackson, Texas...." This language implies that, under this standard, no relocation would be acceptable and that the trial court imposed a higher burden on Melissa than the law requires.
When a trial court incorrectly applies a principle of law, which causes a substantial deprivation of a party's rights or materially affects the disposition, it commits a legal error.[2] Applying the wrong burden of proof is not only an incorrect application of the law, it is inherently prejudicial because it casts a more onerous standard than the law requires on one of the parties. When a trial court commits a prejudicial legal error which affects its analysis of the facts, we are not bound by the manifest-error standard; rather, we must conduct an de novo review if the record before us is complete.[3] Because we have a complete record in the instant case, we continue with an independent review, applying the correct standard.
Under the factors, which La.R.S. 9:355.12 provides, Melissa was required to show, both, that her desire to relocate the children was in good faith and that the move would be in the children's best interest.[4] Accordingly, we must analyze the evidence pertaining to the relocation factors and determine whether Melissa met her burden of proof.

GOOD FAITH
Melissa's current husband quit his previous long-term job in Sulphur, because it required so much travel that it was not conducive to having a family life. Afterwards, he attempted to find work at a local plant but was unable to secure a job with any of them. Thus, he has accepted a position with Dow Chemical in Lake Jackson, Texas. This position allows him to work full time and, at the same time, further his education; Dow is sending him to school to obtain his chemical process degree. He testified that, upon receiving his degree, his salary of $12.90 per hour will approximately double. Again, we find Johnson[5] to be instructive. In that case, we found that the mother's proposal to relocate was in good faith, given the fact that her current husband had obtained a job in the new location with better pay and additional benefits. Likewise, we find that the record demonstrates that Melissa's proposal to relocate to Lake Jackson, where her husband's new job is, was made in good faith. Additionally, she has secured a position in Lake Jackson, making $13.08 per hour. She testified that her hours are flexible and will allow her to take care of all the children's needs.
Dean attempted to show that Melissa did not provide a legitimate reason for the move because there are two schools in the Sulphur area which offer the same training and degree that her husband is pursuing at Dow. However, we do not agree that this, in any way, undermines Melissa's reasons for wanting to relocate. While the same educational programs are offered in the Sulphur area, this does not mean that Melissa's husband is presented with the same opportunities. He would not likely be able to work full time while attending school in Sulphur, diminishing his and Melissa's standard of living and ability to provide for the children. And, in fact, he would likely have to secure loans to pay for tuition, therefore, acquiring debts that would affect the family's standard of living *958 in the future. Thus, we find that Melissa has proved that she proposed the relocation in good faith.
We now turn to an analysis of the relocation factors in La.R.S. 9:355.12.

RELOCATION FACTORS
Louisiana Revised Statutes 9:355.12 provides eight factors that the court is required to consider when determining whether a proposed relocation is appropriate. We will consider each one in light of the evidence in the record:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
Melissa has always been the children's primary caregiver. She testified that her parents have lived within walking distance of them for the last ten years. In fact, when she and the children recently moved out of the marital residence, they moved in with her parents. Additionally, while Melissa has been working in Lake Jackson, the children have been living with her parents. Therefore, it is obvious that the children are very close to their maternal grandparents. However, Melissa also testified that her mother would be coming with her to Lake Jackson for a while to aid in the transition and that her parents hoped to move closer to them if she was permitted to relocate the children there. Conversely, there is no evidence that the children have a very active relationship with Dean's parents, even though they live nearby.
It is undisputed that the children have a close relationship with their father. Melissa confirmed that he attended the children's school or extracurricular activities whenever he could. He asserts that he will not be able to maintain involvement in their lives to the extent that he currently does. He said:
I will not be involved in their everyday activities, their activities after school, the rodeo, 4-H. I've always been there with them and I will not be able to mingle in their activities, their everyday life and be a father like I have always been to them.
We agree that his involvement will be more limited by the move. In fact, we find this to be the strongest evidence presented for denying the relocation. However, the testimony revealed that many of the activities that Dean and the children used to do together have ceased. For example, he was very involved when they used to rodeo. However, they no longer do that. They were also involved in 4-H and used to show animals. However, after the divorce, he had to sell the animals. Thus, we recognize that Dean is unable to participate with the children in the activities they once used to do together. However, the record reveals that this inability resulted from the divorce, and many of the limitations he asserts that the move will create, are actually already in existence due to the divorce. Thus, the relocation will not curtail his current activities with the children to the extent that he asserts.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
The two daughters are ages eight and twelve; the son is six years old. As the trial court pointed out, the children are excelling in their current school. However, there is no reason to believe that the move will adversely impact their development. In fact, Melissa homeschooled the two daughters for three years and, apparently, they were able to make a smooth *959 transition when they were enrolled in their current school. The only evidence of any special needs of the children was that the oldest daughter has ADHD. Melissa testified that this was the initial reason for homeschooling them. Again, however, this child has made a smooth transition and is currently doing very well in school.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
While the extra travel involved will obviously be more burdensome to the parties, we must also recognize that the distance between Lake Jackson and Sulphur is not so great as to require a modification of the visitation schedule. The testimony revealed that the move will not prevent Dean from exercising his visitations rights to the full extent provided for in the joint-custody agreement.
(4) The child's preference, taking into consideration the age and maturity of the child.
The children did not testify, and the only testimony in this regard was Melissa's testimony that they are excited about the move but feel guilty about leaving their dad. This is completely understandable, but as pointed out already, they will be able to exercise the same visitation with their father as before.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
Melissa testified that she is agreeable to making driving arrangements that are not too burdensome on Dean. Unfortunately, there was some testimony that casts doubt on her cooperation in promoting and fostering his relationship with the children. For example, she had agreed to give him additional visitation on specific occasions and, then, changed her mind and denied this at the last minute. He was denied additional visitation even during the time she was in Texas and the children were with her parents. When her parents left the country for a week, she did not tell him but left the children in someone else's care. While we do not reward or condone her conduct, we recognize that she was not required to grant him this visitation, as it was in addition to his regular visitation, and there is no evidence that she attempted to interfere with that. Additionally, we recognize that these proceedings were pending during that time, and Dean, himself, testified that she had told him that the reason for not granting him additional visitation while she was in Texas was that she did not want to lose custody of the children. Therefore, we trust that when the court proceedings are over and Melissa is allowed to move with the children, her behavior in this regard will improve and that she will promote and foster the relationship between Dean and the children, as this seems to be her behavior before this litigation.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
In this regard, we must take into account that Melissa is, in fact, remarried. Part of the reason her current husband quit his job in Sulphur was that the extended travel which was required for the job was not conducive to a good family life. The move will not only allow him to eventually make a higher salary and provide more financial stability for the children, it will also allow him to spend more time with them, providing more emotional support *960 and a more stable home life than if he had to travel all the time. There was no testimony that the children will not have the same educational opportunities in Lake Jackson. Melissa has already visited the school they would be attending, and she testified that one of the children had actually asked to go and see the school.
(7) The reasons of each parent for seeking or opposing the relocation.
We have addressed these within our analysis of the above factors.
(8) Any other factors affecting the best interest of the child.
There is no evidence in the record of any special factors that we need to consider in addition to those already considered.
Therefore, we find that each one of the factors weighs in favor of permitting the children to relocate and that the trial court erred in finding that Melissa did not meet her burden of proof. We reverse the trial court's judgment and grant Melissa's motion to relocate.

CONCLUSION
Melissa Leger Kier appeals a judgment of the trial court, denying her motion to relocate her children to Lake Jackson, Texas. We reverse the trial court's judgment and grant the relocation.
REVERSED.
NOTES
[1] 99-1933 (La.App. 3 Cir. 4/19/00), 759 So.2d 257, writ denied, 00-1425 (La.5/31/00), 762 So.2d 635.
[2] Evans v. Lungrin, 97-541 (La.2/6/98), 708 So.2d 731.
[3] Id.
[4] La.R.S. 9:355.13; Johnson, 759 So.2d 257.
[5] 759 So.2d 257.