NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-0902

WALTER M. SMITH, JR.

VERSUS

THERESA D. SMITH

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 229,341
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.

REVERSED, RENDERED, AND REMANDED.

Brian K. Thompson
Attorney at Law
2915 Jackson Street
Alexandria, LA 71301
(318) 473-0052
COUNSEL FOR PLAINTIFF/APPELLEE:
    Walter Monroe Smith, Jr.

Richard E. Lee
Attorney at Law
810 Main Street
Pineville, LA 71360
(318) 448-1391
COUNSEL FOR DEFENDANT/APPELLANT:
    Theresa Danielle Preston Schwind

PETERS, J.

Theresa Danielle Preston Schwind (Theresa) appeals the trial court's judgment denying her request to relocate to Fort Sill, Oklahoma with her two children. For the following reasons, we reverse the trial court's judgment, render judgment granting that request, and remand the matter to the trial court for implementation of a custody agreement that allows the father, Walter Monroe Smith, Jr. (Monroe) regular visitation.

## DISCUSSION OF THE RECORD

Theresa and Monroe were married on December 27, 2006, but the two children at issue in this litigation were born to the couple before they were married.[1] Reese Kay was born on October 22, 2003, and Aidyn Monroe was born on April 4, 2005.[2] The marriage lasted just over one month as the couple separated on January 31, 2007, and were divorced by judicial decree on February 13, 2008. Immediately after the separation, Theresa maintained physical custody of Reese and Monroe maintained physical custody of Aidyn. The February 13, 2008 divorce judgment provided only that the parties were "awarded joint custody of the minor children," and that neither party would pay the other child support.

Both parties subsequently acquired new spouses.[3] A March 17, 2008 motion by Theresa resulted in a July 16, 2008 judgment maintaining the joint custody status between Theresa and Monroe, but naming Theresa as primary custodian and awarding Monroe visitation every other weekend from Thursday through Sunday, Wednesday

---

[1]The relationship actually dissolved after Aidyn Monroe was born and Monroe married another woman in 2005. It was after that marriage ended in divorce that the couple reunited.

[2]Although at least one of the pleadings lists Reese's birthday as November 22, 2003, the judgment of divorce states that Reese was born on October 22, 2003.

[3]The record establishes that Theresa remarried on February 23, 2008, but the record is unclear as to when Monroe remarried.

nights every other week, shared holidays, and alternate weeks in the summer. The judgment was silent as to child support.

The matter now before us arises from a January 26, 2009 filing by Theresa wherein she sought permission from the court to relocate with her children to Fort Sill, Oklahoma in June of 2009. This request was based on the fact that her current husband, Jeffery Schwind, was then in Africa on deployment with the United States Army and would be stationed at Fort Sill in June of 2009 at the end of his deployment.

The trial court heard the motion on March 9, 2009, with only Theresa and Monroe testifying. At the close of the hearing, the trial court made the following comments with regard to its denial of the request for relocation:

> This court can find no other reason for the relocation other than Mrs. Schwind's new husband has a job in Oklahoma. With that said, the custody order is to remain in force and effect and the request for relocation is denied.
> Further evidence of this appears in the fact that if something happens between Mr. and Mrs. Schwind, there is no one else to take care of the children.
> With that said, this court reluctantly denies the request.

The March 23, 2009 written judgment provided that the requested relocation was denied "due to the fact that the move is related to the employment of the mover's husband and not her own employment."

After the trial court denied Theresa's motion for new trial, she perfected this appeal, asserting two assignments of error:

> The Trial Court committed legal error when it denied the mother the right to relocate for it was not her job that required the move to Fort Sill, Oklahoma but, was that her husband was being deployed to Fort Sill, Oklahoma.

> In the alternative Appellant shows that the Trial Court committed manifest error when it denied Appellant the right to relocate the minor

2

children due to the fact that it was her husband's deployment that was requiring the re-location, and not her employment.

**OPINION**

Issues involving parental relocation where a custody order exists are governed by La.R.S. 9:355.1 *et seq*. "The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La.R.S. 9:355.13. In determining the child's best interest, the trial court must consider "the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life." La.R.S. 9:355.13. To assist the trial court in considering the child's best interest, La.R.S. 9:355.12(A) sets forth twelve factors that the trial court must consider:

> A. In reaching its decision regarding a proposed relocation, the court *shall* consider the following factors:
>
> (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
>
> (6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and

the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

(Emphasis added.)

It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). "However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Evans v. Lungrin*, 97-0541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

Theresa asserts in her first assignment of error that this court should review her case *de novo*, because the trial court committed legal error in failing to consider all of the relocation factors set forth in La.R.S. 9:355.12, and gave as its sole reason for denying her motion to relocate the fact that her husband's employment, not her own,

4

necessitated filing of the motion. We agree as we conclude that the failure of the trial court to consider and/or analyze each location factor set forth in La.R.S. 9:355.12 materially affected the outcome and deprived Theresa of substantial rights. *Leger v. Leger*, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955. That being the case, we are not bound by the manifest error standard of review and, because the record before us is complete, we will conduct a *de novo* review based on the evidence in the record. *Leger*, 854 So.2d 955.

The first issue to be considered is whether Theresa's request for relocation was made in good faith. La.R.S. 9:355.13. There is no serious dispute concerning this element of proof, and we conclude that her request was in good faith. Simply stated, she seeks to relocate because her husband is now stationed in Fort Sill, Oklahoma, and wishes for she and her children to reside with him as a family.

Next, we must address the best interest issue as required by La.R.S. 9:355.13. In doing so, we individually consider the twelve factors set out in La.R.S. 9:355.12(A) in light of the evidence adduced at trial.

**La.R.S. 9:355.12(A)(1)**

The evidence establishes that both Theresa and Monroe have played active roles in their children's lives. Theresa has been the primary caretaker for both children for their entire lives, except for the brief time that Monroe had custody of Aidyn. She has made all decisions concerning their medical and educational requirements, and is the person who takes them for their medical care visits. She reads to them daily, takes them to the library regularly, and cares for all their daily needs. While Monroe's role is limited through his visitation schedule, he does spend significant time with the children and is able to take advantage of his rather extended

5

central Louisiana family for support.[4]  Monroe coaches soccer on Saturdays and volunteers with a runner's organization known as the Rapides Junior Runners.  Reese is involved in both sports, and has played softball.  According to Monroe, his current wife is involved with both children.

**La.R.S. 9:355.12(A)(2)**

Reese is six years old and Aidyn is four, and Theresa has been their primary domiciliary parent since July of 2008.  Reese is doing well in her school, and Aidyn has not yet started school.  Neither has a significant school history.

**La.R.S. 9:355.12(A)(3)**

The only obstacle to maintaining Monroe's relationship with his children is distance.  However, in order to facilitate the continuing relationship, Theresa proposed that Monroe have physical custody of the children for most of the summer and that they share holidays.  She even offered to bring the children to visit him one weekend each month.

**La.R.S. 9:355.12(A)(4)**

This factor is not relevant given the age of the children and the fact that neither child testified or expressed a preference concerning the relocation.

**La.R.S. 9:355.12(A)(5)**

Other than Monroe's complaint that on occasion Theresa would not allow him to speak with the children by telephone, the record establishes that Theresa has cooperated with Monroe's visitation.  As previously pointed out, included in her request for relocation is a proposal that Monroe be given significant time with his

---

[4]Monroe testified that he has approximately twenty-five relatives living in central Louisiana who would lose contact with the children if relocation were allowed.

6

children.  Thus, there is no indication that Theresa has attempted to discourage Monroe's relationship and contact with their children.

**La.R.S. 9:355.12(A)(6)**

The record establishes that Theresa's husband is a career soldier and will be stationed at Fort Sill for approximately three years.  She testified that the children have a good relationship with her husband and speak to him often in Africa via a webcam in their current home.  If she and her children are able to join him at Fort Sill, they can begin their life anew with a permanent family structure.  If she is not allowed to move, she and her children would be required to continue to reside in her parents' central Louisiana home with little chance of her being able to move on in her life.  According to Theresa, the change would be a welcome break from the chaotic life style she and Monroe had engaged in, and would effect a degree of stability beneficial, most of all, to the children.  Housing, according to Theresa, is available on the military base in Oklahoma, and the children would have their own rooms.  Additionally, they would be able to go to schools on the military base.

**La.R.S. 9:355.12(A)(7)**

Theresa's reason for seeking the relocation is clear – the desire to join her husband and form a life for her and her children with him.   She met her current husband in July of 2007, they were married on February 23, 2008, and he was deployed to Africa on March 14, 2008.  She was with him for eighteen days in November of 2008 when he was home on leave.  His deployment will end June of 2009, and he will be stationed at Fort Sill for at least three years.

Monroe's opposition to the relocation is equally clear. He loves his children and he does not want to be separated from them.

7

**La.R.S. 9:355.12(A)(8)**

Monroe testified that he works for his father and did not know how much money he had made in 2008. He estimated that he made $350.00 to $400.00 per week. Theresa testified that courthouse records reveal that three lawsuits are pending against Monroe: one foreclosing on a house in Alexandria, Louisiana; one repossessing a vehicle; and one repossessing a lawnmower. Monroe admitted to all three suits, but suggested that the lawnmower debt was his father's.

Theresa is unemployed and living with her parents. In fact, she has never lived on her own with her children. She hopes to find part-time employment in Oklahoma, but feels that even if she cannot work, living with her husband will be an improvement in circumstances for both her and her husband.

**La.R.S. 9:355.12(A)(9)**

The evidence is mixed on this factor. Theresa testified that she has received no child support from Monroe since they separated in January of 2007, and has paid all bills associated with the children's needs.[5] Monroe disputed her claim that he had not paid support, testifying that, pursuant to a December 2008 judgment which set child support at $355.00 per month and ordered him to pay an additional $125.00 to catch up on an arrearage,[6] he made the appropriate payments in January and February of 2009.[7] Although the fact that he failed to pay any support until ordered to do so by judgment does not excuse him from an obligation to assist in the financial well-

---

[5]As previously noted, however, the divorce judgment specified that neither party would pay the other child support.

[6]This judgment was through a proceeding involving the Support Enforcement Division of the State of Louisiana, and not in the civil proceedings now before us.

[7]Because the hearing on the motion to relocate was held on March 9, 2009, we have no evidence of subsequent history of payment.

being of his children, we note that there is no evidence that his failure to financially support his children before that time caused Theresa or the children any hardship.

**La.R.S. 9:355.12(A)(10)**

Considering the situation of both parties, it appears that it would not be feasible for Monroe to relocate. He works for his father in the central Louisiana area, has remarried, and has another child.

**La.R.S. 9:355.12(A)(11)**

Monroe has previously been arrested for driving while intoxicated, a violation of La.R.S. 14:98, and was admitted to a pre-trial intervention program through the Alexandria, Louisiana, City Court system. His obligations under the program included taking driver education classes and performing community service. At trial, the cleansing period had yet to run, but when it runs, the offense will be expunged from his record.

**La.R.S. 9:355.12(A)(12)**

Finally, the court is obligated to consider any other factors that may affect the best interest of the children. This obviously encompasses each unique circumstance that might pertain to individual cases. Here, the major factor in the children's best interest is the stability that Theresa's move to Fort Sill, with her new husband, will offer the children.

Based on our *de novo* analysis of the twelve factors set out in La.R.S. 9:355.12, we find no factors that would prevent relocation. After weighing the factors as a whole, we find that they weigh in favor of allowing the relocation. Accordingly, we find that Theresa has successfully carried her La.R.S. 9:355.13 burden of proving that

the relocation is in the best interest of the children.  Thus, we find that the trial court erred in concluding otherwise.

**DISPOSITION**

We reverse the trial court's judgment denying Theresa Danielle Preston Schwind's request to relocate the children to Fort Sill, Oklahoma; render judgment granting that request; and remand to the trial court for implementation of a custody agreement that allows the father regular visitation consistent with this opinion.  All costs of this appeal are assessed to Walter Monroe Smith, Jr.

**REVERSED, RENDERED, AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Rule 2-16.3, Uniform Rules—Courts of Appeal.