# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-327

JAMIE CASS

VERSUS

KEVIN CHARLIE CASS

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 19395
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

## REVERSED AND REMANDED.

**Saunders, J., dissents and assigns written reasons.**

J. Ogden Middleton, II
1744 White Street
Alexandria, LA  71301
(318) 443-4377
COUNSEL FOR DEFENDANT/APPELLANT:
    Kevin Charlie Cass

David C. Hesser
2820 Jackson Street
Alexandria, LA  71301
(318) 542-4102
COUNSEL FOR PLAINTIFF/APPELLEE:
    Jamie Cass

AMY, Judge.

The defendant appeals a judgment of the trial court disallowing him to relocate to Texas with his minor son and naming the plaintiff as domiciliary parent. For the following reasons, we reverse and remand.

**Factual and Procedural Background**

Ms. Jamie Cass, the plaintiff and appellee, and Mr. Kevin Cass, the defendant and appellant, obtained a judgment of divorce on July 31, 2009. Pursuant to a consent judgment, the parties shared joint custody of one minor child born of the marriage. The consent judgment, entered on May 28, 2009, detailed a shared physical custody schedule and designated Mr. Cass as the domiciliary parent.

The record reveals that Mr. Cass, a Sergeant First Class in the Army, received orders in early 2009 informing him that he was being transferred from Fort Polk in Louisiana to Fort Hood in Texas. Mr. Cass asserts that at some time in either April or May 2009, he informed Ms. Cass, a Lieutenant in the Army, of the transfer order. On May 29, 2009, Ms. Cass filed an "Objection to Relocation, Rule For Relocation Evaluation, and Rule For Custody" seeking to prevent Mr. Cass from moving out of Louisiana with the child until a hearing could be held in addition to requesting that she be named the domiciliary parent. Mr. Cass answered Ms. Cass's objection and filed a rule for a temporary order to relocate.[1] On July 29, 2009, the trial court denied Mr. Cass's request to temporarily relocate the child to Fort Hood, and a hearing was set to determine the permanent relocation issue.

Following a three-day hearing, the trial court issued oral reasons for judgment denying Mr. Cass's request to relocate, changing domiciliary custody to Ms. Cass, and denying Mr. Cass's request to remain in Louisiana as a domiciliary custodian.

---

[1] Included with the rule for a temporary order to relocate were other motions which are not at issue in this appeal, and therefore, will not be discussed herein.

A "Judgment on the Rule" was subsequently signed; however, the written judgment did not contain reference to the trial court's denial of Mr. Cass's request to remain in Louisiana as a domiciliary custodian. Mr. Cass filed a Motion for Entry of Supplemental Judgment, and on September 10, 2009, the trial court issued a supplemental judgment reflecting that denial.

Mr. Cass appeals, asserting the trial court erred in: (1) misapplying the relocation statute and denying his request to relocate; (2) failing to follow the required analysis in relocation cases; (3) finding that his move to Texas constituted a change in circumstance warranting a modification of the initial consent judgment; (4) naming the defendant as the domiciliary parent and refusing to recognize him as a Louisiana domiciliary; (5) failing to have the child's *in camera* interview transcribed; (6) ignoring the mental health evaluator's findings; and (7) refusing to let the mental health evaluator see the minor child to further evaluate emotional issues.

**Discussion**

*Standard of Review*

Mr. Cass first asserts that this court should conduct a *de novo* review of the present matter, contending that the trial court: failed to consider the relocation factors enumerated in La.R.S. 9:355.12; ignored the applicable burden of proof under La.R.S. 9:355.13, and; in making its decision, the trial court relied upon what the child related to it in an *in camera* conversation that was not transcribed. He argues that these alleged failures constitute legal error; therefore, this court is not bound by the manifest error standard.

2

A parent seeking relocation must prove two things: (1) that the proposed relocation is in good faith and (2) that the proposed relocation is in the best interest of the child. La.R.S. 9:355.13. Louisiana Revised Statutes 9:355.12 enumerates factors the trial court shall consider in deciding a contested relocation, as follows:

(1)    The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

(2)    The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

(3)    The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

(4)    The child's preference, taking into consideration the age and maturity of the child.

(5)    Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

(6)    Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7)    The reasons of each parent for seeking or opposing the relocation.

(8)    The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9)    The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10)    The feasibility of a relocation by the objecting parent.

(11)    Any history of substance abuse or violence by either parent,

3

including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12)    Any other factors affecting the best interest of the child.

This statute mandates that the trial court consider the enumerated factors; however, it does not require the court to give preferential consideration to any certain factor. *Curole v. Curole*, 02-1891 (La. 10/15/02), 828 So.2d 1094. A trial court's determination in a relocation dispute is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. *Id.* Further, a reviewing court may not set aside a trial court's factual findings in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the trial court's findings: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's findings, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Richardson v. Richardson*, 09-609 (La.App. 3 Cir. 11/18/09), 25 So.3d 203, *citing Mart v. Hill*, 505 So.2d 1120 (La.1987). On review, if the trial court's findings are reasonable based upon the entire record, the reviewing court may not reverse even if it is convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. *Id.*

 In its oral reasons for judgment, the trial court stated, in pertinent part:

> In my decision in this case, is based not only on the evidence that has been presented in this proceeding, but also the interest that [the child] has conveyed to me. Sergeant Cass, you bear the burden of proving that this relocation would be in [the child's] best interest. In my opinion, you are placed in a very difficult situation, because of your career. Whether you orchestrated a move, or whether you were ordered to move, and had little or no say so in where you were moving to, as you were presented, or as you testified in this Court, on the 31st of July, on Monday, the 17th, and, an on the 17th, you have very sketchy

4

information about your work schedule, your duties, who would care for [the child] while you are at work. There's very limited information on the school, other than what some website, how some website ranked it, which I place no significant credence in. I am left with a lot of questions about [the child's] environment in Fort Hood.

. . . .

[W]e have Ms. Cass, who has lived in the same home for a period of approximately two-years. Her work schedule is very defined, and it is scheduled in such a manner to where there is no reliance on day care.

. . . .

Sergeant Cass, I find that you have not met your burden of proving that the relocation would be in [the child's] best interest.

While a trial court is not required to specifically list each of the enumerated factors, the record must support that it considered the factors in light of the particular evidence presented. *Leger v. Leger*, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955. Here, in its oral reasons for judgment, the trial court found Mr. Cass failed to carry his burden of proof, characterizing the information about his work schedule, the child's school, and child care services as "sketchy." It stated that there was limited information provided about the child's school absent a website ranking, which it opined was unpersuasive.

However, at the hearing Mr. Cass testified that he enrolled the child in Meadows Elementary School and met with the school's principal. He explained that Meadows Elementary was the elementary school which corresponded with his assigned military housing on the base. Mr. Cass related that when he met with the principal of the school, she provided him with a packet of information about the school and base, including: a "Welcome" letter from Fort Hood explaining its size and function; a calendar of family activities available in Mr. Cass's assigned neighborhood and school; a school calendar including vacation days, testing dates, and parent conference dates; a school supply list and information about school meals,

5

and a memo from the school district superintendent detailing information about the bus routes, classroom and extra-curricular educational opportunities, and contact information for the schools. Mr. Cass also testified that he had scheduled an appointment with the gifted and talented teacher at the school in order to have the child tested for gifted classes. This informational packet and brochure detailing the gifted and talented program were submitted into evidence at the hearing.

The hearing's transcript reveals that the trial court asked Mr. Cass what his normal work schedule would be during the week, and Mr. Cass confirmed that it would be 9:00 a.m. to 4:30 p.m., Monday through Wednesday. He indicated that on Thursdays, he would be released at 1:00 p.m. for "Family Day."

As to child care, Mr. Cass testified that he enrolled his son in child care services offered on the military base. He explained that the child care services were available before and after the child's school hours for any time in which Mr. Cass was required to work during school hours. In response to questioning from the trial court, Mr. Cass explained that he had the child care services available in addition to a private child care provider and his mother if an emergency arose. He testified that he made arrangements with military housing personnel to allow his mother to live at the house, not to exceed thirty days in a one month window, to provide child care if he was called away from the home to field assignments.

Here, in its oral reasons for judgment, the trial court found Mr. Cass failed to carry his burden of proof, characterizing the information about his work schedule, the child's school, and child care services as "sketchy." It stated that there was limited information provided about the child's school absent a website ranking, which it opined was unpersuasive. Although the trial court provides reasons for its ruling, it's

6

original judgment, supplemental judgment, and oral reasons for judgment do not cite

or make reference to any of La.R.S. 9:355.12's factors.[2]  While a trial court is not

[2] The trial court's oral reasons for judgment state, in pertinent part:

In trying to decide this case, there are, there have been many issues presented by the parties.  It's my view that, with respect to Sergeant Cass' request to relocate, that I am to determine what is in [the child's] best interest.  The parties, both sides, has [sic] spent a significant amount of time trying to point out to me how the other is a bad parent.  I see very positive aspects for both parents, and I see some weaknesses on both sides.

I think that as a couple, that the two of you probably complimented each other.  I think some of the strengths of one would compliment the weaknesses of the other.  I think that both sides have a tendency in this proceeding to, fail to take responsibility for their own actions in bringing us to this place.  I'm not here to decide whose the best parent, or who is a better parent.  I'm here to decide what is going to be [the child's] best, what is going to serve his interests for the best, for the immediate future.

[The child] is a, based on my brief conversation with him, he is a personal [sic] young man, who loves both his parents. [He] wants to spend time with both parents.  He does not want to decide, and nor should he have to decide, which parent he will spend the majority of his time with.  He did not want to fill, fulfill that role, which was his reluctance to speak with Dr. Logan.  Because that was going to be the ultimate question asked of him.  I did not want to ask him that question, because I knew he did not want to answer that question.  I did explore interest with [the child].

In my decision in this case, is not based not only on the evidence that has been presented in this proceeding, but also the interest that [the child] has conveyed to me.  Sergeant Cass, you bear the burden of proving that this relocation would be in [the child's] best interest.  In my opinion, you are placed in a very difficult situation, because of your career.  Whether you orchestrated a move, or whether you were ordered to move, and had little or no say so in where you were moving to, as you were presented, or as you testified in this Court, on the 31st of July, on Monday, the 17th, and, and on the 17th, you have very sketchy information about your work schedule, your duties, who would care for [the child] while you are at work.  There's very limited information on the school, other than what some website, how some website ranked it, which I place no significant credence in.  I am left with a lot of questions about [the child's] environment in Fort Hood.

It has nothing to do with whether or not you love your son, and whether or not you have been involved in his upbringing, or his education.  I believe that, that is clear.  That you have been.  What concerns me is based on the testimony there would be significant times where [the child] would be in the child care provided by the military, or left with a private sitter, whom by your own testimony you could not recall that persons name.  I'm not saying that's all entirely your fault, but that is the situation we find ourselves in.

On the converse, we have Ms. Cass, who has lived in the same home for a period of approximately two-years.  Her work schedule is very defined, and it is scheduled in such a manner to where there is no reliance on day care.  Are there some areas that Ms. Cass should improve on as a parent?  I believe that there are.  Ms. Cass, based

7

required to specifically list each of the enumerated factors, the record must support that it considered the factors in light of the particular evidence presented. *Leger v. Leger*, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955. While there is no doubt that the trial court expressed concern for the parties, especially the minor child, it is difficult for this court, on review, to determine what factors, if any, the trial court considered, and how it evaluated and weighed the evidence under each factor. Further, the record does not support that the findings the trial court did make were reasonably based upon the evidence in the record. Here, Mr. Cass submitted several exhibits explaining Fort Hood's environment and Meadows Elementary. He further testified as to the hours he would be working, how child care was to be provided, and what activities he either planned to enroll the child in or had already enrolled the child in. Also, he testified extensively regarding the opportunities available at Fort Hood. Mr. Cass also submitted documentary evidence to support his testimony. The school rankings referenced in the trial court's oral reasons for judgment were submitted by Ms. Cass.

---

on the testimony that has been presented, I believe that is [sic] somewhat of a confusion, in your mind, as whether you are [the child's] mother, or whether you're his buddy. There have been several examples presented to this Court, where [the child] decided what he was going to do: meeting with Dr. Logan, going to the Pine Ridge Derby, continuing to attend college camp. Those are, in my opinion, those are decisions that you should have made. I understand that you and Sergeant Cass may have differences of opinion regarding discipline. Appropriate discipline is very important for a child.

The bottom line comes down to, there's been testimony that both of you, you have both testified that the other loves [the child], and is a good parent. You both did that. So, in my mind, where is [the child] going to be cared by a parent the most? For that reason, Sergeant Cass, I find that you have not met your burden of proving that relocation would be in [the child's] best interest.

Based upon a lack of indication that the trial court considered all of the factors in La.R.S. 9:355.12 in addition to our determination of manifest error in some of the underlying factual determinations, we find that a *de novo* review is required. The finding of error does not mandate a reversal on that ground alone; rather, this court may remedy the deficiency via a *de novo* review based on the evidence in the record. *Leger*, 854 So.2d 955.

*De Novo Review*

Under a *de novo* review, we must analyze the evidence presented regarding the relocation and determine whether Mr. Cass met his burden of proving: (1) that the proposed relocation is in good faith; and (2) that the proposed relocation is in the best interest of the child. La.R.S. 9:355.13.

*Good Faith*

There is no dispute in the record that Mr. Cass was ordered by the United States Army to report to Fort Hood in Texas. However, Ms. Cass contends that Mr. Cass "made plans to relocate out of Louisiana in order to deprive [her] of her relationship with the minor child." She further contends that Mr. Cass "likely requested that he be transferred to Fort Hood given the parties' history of the military allowing them to choose where they wanted to be assigned."

Mr. Cass testified, at length, about the military's process of transferring soldiers. He explained that he was asked to fill out a form in 2006 for his personnel file listing his preferences for relocation if his transfer became necessary. Mr. Cass testified that he listed Fort Hood in Texas and Fort Carson in Colorado, explaining that he did not have the choice to list Fort Polk as an option. Mr. Cass related that on January 7, 2009, he received his first orders to report on May 10, 2009. He stated that

9

his counsel, whom he had retained for the divorce proceedings, recommended he wait until sixty days before the move to inform Ms. Cass. At the hearing, Mr. Cass explained as follows:

> And, Your Honor, the first orders were dated January the 7th. I had those amended to say that I agreed to go to Fort Hood. Then they were dated 21st January, to reflect the July 10th relocation to Fort Hood. I then went a step further and utilized my total 90 day extension of these current orders to be relocated. Once that had been initiated, now the Department of the Army is saying, "Sergeant Cass, you agreed prior to the 7th of January. We allowed you to extend the 60 now to 90 days. Now you must relocate to Fort Hood." If, in hindsight, Your Honor, if I knew that Jamie was - - had ability to relocate that far out where she was able to, I'm sure I would've informed her, from Counsel's recommendation, to do that. But to stay at Fort Polk now is impossible[.]

The record contains the orders requiring him to report to Fort Hood, which corroborate his testimony. While Ms. Cass argues that Mr. Cass's relocation is in bad faith, she offers no evidence other than the assertion, in brief, that Mr. Cass "likely requested that he be transferred to Ft. Hood" to "deprive her" of a relationship with her child. She has offered no contradictory evidence demonstrating that Mr. Cass or the military conspired to have him transferred or any other action on the part of Mr. Cass indicating bad faith. *See Richardson*, 25 So.3d 203.[3] In light of the evidence

---

[3] In *Richardson*, 25 So.3d at 207, a case factually similar to the present matter, a panel of this court discussed good faith relocation and military orders, stating:

> The court further indicated that just because Steven might have told Chanda years earlier that he wanted to be transferred to Fort Carson one day, this fact did not mean, and there was no evidence in support, that Steven and the military colluded or conspired to get the transfer through shortly after Steven won primary custody of the children. The trial court further stated that Chanda had only opinions regarding the relocation, while the military order dated April 3, 2008, was credible evidence that the military had taken charge of Steven's life, as always, and transferred him to another location. The trial judge indicated that it was more surprising that the military had allowed Steven to stay in Louisiana for eleven years.

> Steven testified that he had always wanted to go to Fort Carson, and that he had spoken about it, saying that he would probably be sent somewhere, and that if he had a choice, it would be Fort Carson. He stated that when he received the April 2008 notice, his choices were, Hawaii, New Jersey, and New York. He further stated

presented, the record supports a finding that Mr. Cass met his burden of proving that the relocation was in good faith.

*Relocation Factors*

In addition to proving that relocation was made in good faith, Mr. Cass must prove that relocation is in the child's best interest. La.R.S. 9:355.13. "In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life." The court must also consider the enumerated factors in La.R.S. 9:355.12. We turn to consideration of the record in light of these factors.

*(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life*

Dr. James Logan, a medical psychologist, was appointed by the parties to make a determination as to whether relocation was in the best interest of the child. When asked specifically about this factor, Dr. Logan replied "I would still give an advantage to [Mr. Cass] on that factor. Clearly not based on the duration of primary care-taker, but just an overall global impression of the current relationship." In his "relocation evaluation" report submitted into evidence, Dr. Logan opined that the child "appear[ed] to be most comfortable and enthusiastic when in the company of his father."

_____

that the Army considers you "stagnant" if you stay in one place too long. He stated that when he saw the choices, he held out for a short time to see if Fort Carson, Colorado became available, and it did. The record contained the official transfer orders to Fort Carson, Colorado, a letter from Steven's commander stating the reason for the PSC [permanent station change], and a letter from his branch manager indicating the available locations. The trial court did not abuse its discretion in finding that Steven's relocation of himself and the minor children to Colorado was done in good faith.

11

At the hearing, Ellis R. Spikes, principal of G.W. Carver Elementary, testified that Mr. Cass was heavily involved in the child's school, volunteering in the classroom and on the playground in addition to attending and coordinating parent-child activities. The record also reveals that Mr. Cass was involved in Cub Scouts with the child. Dr. Logan also noted that Mr. Cass's involvement and effort to be involved in the child's life was "impressive."

Testimony indicates that the child also has a close relationship with his mother and with his half-sister, Ms. Cass's daughter from a previous relationship. The record reveals that Ms. Cass and the child enjoy activities such as fishing, baseball, movies, canoeing, and roller skating.

The record reveals that both parties have a close relationship with their son and have, at different times in the child's life, been the primary caregiver. However, the weight of evidence, including the testimony of the parties, the child's school principal, and Dr. Logan, under this factor, favors relocation.

*(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child*

This factor also favors relocation. As explained above, Mr. Cass was heavily involved in the child's schooling. Both parties testified that the child was struggling academically during the 2006/2007 school year, and the parties feared that he would fail the first grade. During this period of time, Ms. Cass was the child's primary caregiver. However, in May of 2007, Ms. Cass moved from DeRidder to Pollock, and Mr. Cass became the child's primary caregiver. The record reveals that the child's grades began to steadily improve over the next two years, and in May 2009, the child received a 4.0 grade point average. Ms. Cass contends that the improvement

of grades was a result of diagnosing the child with a speech problem that was affecting his test taking ability. Dr. Logan opined "that Sergeant Cass apparently places a higher value in academic involvement, academic achievement. The young man is profiting from it. At one point, years ago, he was at risk of repeating the first grade. Now he's on the cusp of being tested for gifted and talented."

It is clear that both parents are committed to their child's education; however, in reviewing this factor, we must ask what "impact" the relocation would have on the child's educational development. In reviewing the child's academic history in the present matter, there is evidence that Mr. Cass's heavy involvement positively impacts the child's academics. As such, continuance of that involvement would be in the child's best interest, and this factor favors relocation.

*(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties*

This factor does not favor either party insofar as the parties appear to be willing to incur travel expenses to share regular periods of physical custody throughout the year. In its judgment, the trial court provided a physical custody arrangement wherein Mr. Cass would exercise physical custody on the 2nd and 4th weekend of every month. The child would be flown from Alexandria to Dallas/Fort Worth, and the parties would equally share the cost of transportation. Mr. Cass would have physical custody for the entire summer absent two weeks. The record reveals that both parties are financially able to maintain this type of visitation arrangement. In brief, neither party argues that the logistics of the trial court's visitation arrangement make it unfeasible, thus the visitation schedule could be modified, in the event of

13

relocation, to allow Ms. Cass physical custody on alternating weekends and in the summer.

*(4) The child's preference, taking into consideration the age and maturity of the child*

This factor does not favor either parent in light of an absence of evidence on the subject. Dr. Logan's report opines that the child "expressed no reservations about the location." The trial court met with the child in chambers, but that meeting was not transcribed.[4] In oral reasons for judgment the trial court stated:

> [The child] is a, based on my brief conversation with him, he is a personal [sic] young man, who loves both his parents. [He] wants to spend time with both parents. He does not want to decide, and nor should he have to decide, which parent he will spend the majority of his time with. . . . I did not want to ask him that question, because I knew he did not want to answer that question. I did explore interest with [the child].

Since this conversation was not transcribed, there is no evidence in the record to determine whether the child has a preference and, thus, this factor favors neither parent.

*(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party*

Both Mr. and Ms. Cass contend that the other has established a pattern of conduct to thwart the other's relationship with the child. The record reveals that both parties have acted contentiously towards each other at different times throughout this proceeding with neither party clearly acting more egregiously than the other. The

---

[4] Mr. Cass questions the failure to transcribe the interview in support of his argument that a *de novo* review is required. Specifically, he argues the trial court committed legal error in relying in part upon what the child told him in rendering a decision and that conversation not being made part of the record. We note that while the trial court referenced the conversation in its oral reasons for judgment, the trial court has filed a *per curiam* with this court stating that it did not rely on the conversation with the child in rendering its opinion.

14

record also indicates that both parties have a desire to support the child's relationship with the other parent. Accordingly, this factor favors neither.

*(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity; and (8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child*

There is sufficient evidence in the record to support a finding that relocation would enhance Mr. Cass's and the child's quality of life. Mr. Cass's testimony indicates that Fort Hood offers a myriad of activities wherein the child would spend time with other families who share the commonality of being in the military. Additionally, as discussed earlier, relocation would benefit the child's educational development as Mr. Cass has shown to provide an effective support system to allow the child to succeed academically.

Ms. Cass testified that she is currently employed as a military dental hygienist, and is obligated to remain at this position in Louisiana for two years. Ms. Cass testified that she earns $4,600.00 a month for her job and can adequately provide for the child's needs under this salary. In brief, Ms. Cass contends that she earns a higher salary than Mr. Cass because she outranks him. Mr. Cass testified that he earns an annual gross income, which included a bonus, of $73,740.00 dollars. He asserts that relocation is necessary per his obligation to the military and to improve his salary and maintain him on the track of retiring in fewer than four years.

Based on the evidence in the record and in light of the transfer facilitating Mr. Cass's retirement and increase in salary, we find that this factor favors relocation.

*(7) The reasons of each parent for seeking or opposing the relocation*

Here, Mr. Cass is seeking relocation in order to fulfill his military obligations. In brief, Ms. Cass asserts that she is opposing relocation "because it would substantially damage the child's relationship with her." However, Ms. Cass does not specify how her relationship with the child would be substantially damaged in light of the evidence which indicates the parties have previously operated under a shared physical custody plan. This factor favors relocation.

*(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations*

This factor is not applicable to the present case. Mr. Cass does not assert that Ms. Cass, the objecting parent, has failed to fulfill any financial obligations.

*(10) The feasibility of a relocation by the objecting parent*

Ms. Cass's military obligation requires her to remain in Louisiana, thus her relocation is not feasible. This factor does not favor relocation.

*(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation*

Ms. Cass contends that Mr. Cass has an anger management problem which has resulted in abuse to her teenage daughter. Mr. Cass admitted to violence against his ex-wife from a previous marriage, for which he received counseling; however, he denied any abuse against Ms. Cass's teenage daughter. The trial court limited submission of evidence regarding the alleged abuse of Ms. Cass's daughter, and thus the facts of the alleged abuse are unclear from the record. Dr. Logan commented in his relocation evaluation that Mr. Cass demonstrated some heightened levels of anger possibly from the custody dispute or his military background. However, nothing in

16

the evaluation indicated that Mr. Cass was a threat to the child or that it was not in the child's best interest to be with Mr. Cass; in fact, Dr. Logan opined the opposite.

*(12) Any other factors affecting the best interest of the child*

In its oral reasons for judgment, the trial court reasoned that relocation was not in the best interest of the child because Mr. Cass would have to rely, in part, on outside child care whereas Ms. Cass would not. Mr. Cass testified that he would have to rely on child care three days a week for the window of time from when the child got out of school and he was working. The record indicates that before the relocation dispute, Mr. Cass, per the consent judgment, was the child's domiciliary parent and that the child lived with him during the school week. At that time, Mr. Cass had to rely on child care much like he would have to do at Fort Hood. Ms. Cass has not articulated why, at this point, it would not be in the best interest of the child to be exposed to minimal outside child care.

Based on our above *de novo* analysis of the factors set out in La.R.S. 9:355.12, we find no factors that would prevent relocation. After weighing the factors as a whole, we find that they preponderate in favor of allowing relocation. Accordingly, we find that Mr. Cass has carried his burden of proving that relocation is in the child's best interest.

**DECREE**

For the foregoing reasons, we reverse the trial court's August 19, 2009 judgment and September 10, 2009 supplemental judgment. On appeal, we reinstate Mr. Cass as the domiciliary parent. The parties will continue to share joint custody. As we recognize that the parties scheduling needs may have changed since the judgment was rendered, we remand for the entry of a physical custody schedule in

17

light of the minor child's relocation with his father.  All costs of this proceeding shall be assessed against Ms. Cass, the plaintiff and appellee.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-327

JAMIE CASS

VERSES

KEVIN CHARLES CASS

**SAUNDERS, J., dissents and assigns written reasons**

In this relocation and custody matter, the majority has concluded firstly that the trial court committed legal error in its analysis of the case and that the matter should be reviewed on a *de novo* basis, and secondly, on *de novo* review, that it is in the best interest of the child that Mr. Cass be allowed to relocate David and to be reinstated as domiciliary parent. I respectfully disagree.

In finding that the trial court committed legal error, the majority opinion references the case of *Leger v. Leger*, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955, to stand for the principle that although the trial court is not required to specifically list each of the enumerated factors of La.R.S. 9:355.12, there must be support in the record suggesting that each of the factors were considered. This court, in *Leger*, addressed a relocation case where the trial court stood firmly against relocation of the children—stating that, "[t]his court is unwilling to put the children in **ANY RISK** associated with a move. . . ." *Leger*, 854 So.2d at 956-957. This court found that the trial court was imposing too high a burden on the mother seeking relocation and stated that no relocation would be acceptable under such an elevated standard.

I find the present matter to be distinguishable from *Leger*. There is nothing to indicate that the trial court in this matter was so firmly entrenched in its stance

against relocation as to be applying a heavier burden on Mr. Cass than is required by law.  Although the trial court did not list each of the factors to be considered, it did provide numerous reasons justifying its decision—in particular, its finding that Ms. Cass would provide a more stable environment for David because of her structured work schedule and the fact that she would not need to rely on daycare.

It is my opinion that this case more closely mirrors this court's decision in *Miller v. Miller*, 01-356, (La.App. 3 Cir. 10/31/01), 799 So.2d 753, where the court found that the trial court had not committed legal error in choosing to only emphasize  three of the listed factors in its reasons for judgment.  In the present case, the trial court, in its reasons for judgment, addressed at least five of the La.R.S. 9:355.12 factors—particularly factors one (The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life) and six (Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity).

Regarding factor one, the trial court noted that David loves both parents and wants to spend time with both parents.  It also noted that Mr. Cass has been active in the David's life and his education, and it expressed concern that Ms. Cass was occasionally more of a "buddy" than a parent.

Regarding factor six, the trial court expressed great concern with the amount of time David would have to spend in childcare if Mr. Cass was allowed to relocate, and it noted that Ms. Cass would not need to rely on daycare.

Furthermore, the trial court expressed its dissatisfaction with the amount of information provided by Mr. Cass on what his work schedule would be and on the school David would attend. The trial court also took into consideration the fact that Ms. Cass has been living in the same home for the past two years.

Outside of these two factors, the trial court also commented that David did not want to choose which parent he wanted to live with (Factor 4). It also addressed the problem of both parents attempting to depict the other as a bad parent (Factor 5). Finally, the trial court, in great detail, discussed visitation arrangements and how each party would bear the costs of David's travel back and forth (Factor 3).

For these reasons, I disagree with the majority opinion that the trial court committed legal error in failing to consider the factors set out in La.R.S. 9:355.12.

However, even if legal error had occurred on the part of the trial court, I find that a *de novo* review of the record would still support a denial of Mr. Cass's request for relocation. In addition to the studied reasons laid out by the trial court, I find great significance in David's close relationship with his half-sister and also with the pattern of violent behavior exhibited by Mr. Cass in the past.

A strong sibling relationship is an incredibly important bond, the impact of which is impossible to measure. The potential for severing that relationship should not be taken lightly. The record indicates that David and Jessie have the type of sibling bond that should not be disturbed without compelling reasons.

Furthermore, as important as the relationship between David and his sister seems to be, perhaps an even more compelling consideration for denying the relocation request is Mr. Cass's history with anger/violence, most notably his

3

extreme method of disciplining Jessie, his elevated MMPI results, and his history with domestic assault.  I fail to see how being brought up in such an environment can be interpreted as being in David's best interests.

For these reasons, I respectfully dissent from the majority opinion.