STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-609


CHANDA PRATHER RICHARDSON

VERSUS

STEVEN TODD RICHARDSON


**********


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 71,071, DIVISION A
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
John D. Saunders, Judges.


AFFIRMED.

Clay Williams
Williams & Nelson
P. O. Drawer 1810
Leesville, LA 71496
Telephone: (337) 238-4704
COUNSEL FOR:
  Defendant/Appellee - Steven Todd Richardson


Terry W. Lambright
100 S. Third Street - Suite A
Leesville, LA 71446
Telephone: (337) 239-6557
COUNSEL FOR:
  Plaintiff/Appellant - Chanda Prather Richardson

**THIBODEAUX, Chief Judge.**

This case involves custody and relocation disputes between the appellant, Chanda Richardson Lalonde, and her former husband, Steven Richardson. After initially stipulating to joint custody and visitation, with Chanda as the domiciliary parent of the parties' two minor children, Steven sought, and was eventually awarded, primary custodial parent status. Subsequently, as a member of the military, Steven sought to relocate to Fort Carson, Colorado, pursuant to Army transfer orders. The trial court approved the relocation, and Chanda filed this appeal. For the following reasons, we affirm the trial court's judgment approving the relocation of the minor children to Colorado with Steven.

I.

### ISSUES

We must decide:

(1)  whether the trial court manifestly erred in assessing the minor children's testimony; and,

(2)  whether the trial court erred in approving the relocation and thereby maintaining the children's custody in the relocating parent.

II.

### FACTS AND PROCEDURAL HISTORY

Chanda and Steven were married for eight years and divorced on November 12, 2003, when one child was seven years old, and the other was four years old. Steven initially stipulated to joint custody, with Chanda as the domiciliary parent. Over the next several years of this fractious relationship, several contentious legal proceedings resulted in psychological evaluations, civil warrants, and implementation of a modified plan for joint custody.

In February 2008, following a hearing on Steven's rule to modify custody, the trial court considered the psychological evaluations of the parties, the significant documentary evidence, depositions, reports, and live testimony, as well as the "best interest" factors of La.Civ.Code art. 134. In March 2008, finding that the mother's own disorder had a profound effect on her ability to parent, and finding that she was unwilling to facilitate a close relationship between the children and Steven, the trial court ordered that the September 2003 joint custody order be modified to name Steven as the primary custodial parent, with visitation to Chanda. The order also provided that if either parent was to be away for thirty days or more, the other parent would be allowed to keep the children before any other arrangements were made, but not if the children were in school at the time and would have to be transferred. In April of 2008, Steven received orders from the Department of the Army for a permanent station change (PSC) to Fort Carson, Colorado. He filed a motion with the court to relocate, and Chanda opposed the motion.

Following a hearing in August 2008, the trial court entered a judgment in December of 2008 allowing the relocation of the children to Colorado, with the provision that if Steven were deployed, Chanda could have the children for the entire school year. Chanda appealed the judgment.

III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

2

a. the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

b. the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

Chanda contends that the trial court erred in assessing the testimony of the minor children and that the error is tantamount to a legal error that would require this court to conduct a de novo review of the record. We disagree. The trial court's interpretation of the testimony in this case is based upon reasonable factual conclusions, and the standard of review is manifest error, not legal error.

The trial court considered the testimony of both children and indicated that only one child stated a preference, which was a strong preference, and that it would be given significant consideration. Taking the testimony as a whole, this was not a misstatement by the court. The trial court then considered the young age of the child with the stronger preference, and determined that a child of such tender years

3

should not be put in a decision making position on custody and relocation issues. The "reasonable preference" of the child is a factor in determining the best interest of the child, "if the court deems the child to be of sufficient age to express a preference." La.Civ.Code art. 134(9). Likewise, La.R.S. 9:355.12, governing relocation, provides that one of the factors used to determine a contested relocation is "[t]he child's preference, taking into consideration the age and maturity of the child."

Dr. John Simoneaux, who performed psychological evaluations on all family members stated that the custody issue should be determined by adults, not children. We find that the trial court's factual conclusions regarding the testimony of the minor children were reasonable based upon the record as a whole, and we will not disturb its reasonable determinations and inferences of fact upon review.

**Burden of Proof**

Chanda further contends that the trial court clearly erred and abused its discretion in allowing Steven to relocate with the minor children to Colorado. The question for this court then, upon appeal, is whether Steven, the relocating parent with custody of his two children, met his burden of proof with regard to the relocation. Steven's burden of proof is found at La.R.S. 9:355.13:

> § 355.13. Burden of proof
>
> The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life.

Therefore, Steven's burden of proof is two-fold, in that the relocation must be made (1) in good faith; and, must be (2) in the best interest of the children. With regard to the first prong, Chanda contends that Steven did not act in good faith

4

in relocating, but rather orchestrated a transfer with the military to Fort Carson, Colorado, with the specific intent of separating the children from their mother. She argues that it had always been Steven's wish to transfer to Colorado, and that after having been stationed in Louisiana for eleven years, he was suddenly transferred to Colorado just thirty days after he obtained custody of the minor children. The trial judge stated that he would be surprised if, in every soldier's life, the soldier and spouse did not discuss their preferred stations and where they would like to live while in the military.

The court further indicated that just because Steven might have told Chanda years earlier that he wanted to be transferred to Fort Carson one day, this fact did not mean, and there was no evidence in support, that Steven and the military colluded or conspired to get the transfer through shortly after Steven won primary custody of the children. The trial court further stated that Chanda had only opinions regarding the relocation, while the military order dated April 3, 2008, was credible evidence that the military had taken charge of Steven's life, as always, and transferred him to another location. The trial judge indicated that it was more surprising that the military had allowed Steven to stay in Louisiana for eleven years.

Steven testified that he had always wanted to go to Fort Carson, and that he had spoken about it, saying that he would probably be sent somewhere, and that if he had a choice, it would be Fort Carson. He stated that when he received the April 2008 notice, his choices were, Hawaii, New Jersey, and New York. He further stated that the Army considers you "stagnant" if you stay in one place too long. He stated that when he saw the choices, he held out for a short time to see if Fort Carson, Colorado became available, and it did. The record contained the official transfer orders to Fort Carson, Colorado, a letter from Steven's commander stating the reason

for the PSC, and a letter from his branch manager indicating the available locations. The trial court did not abuse its discretion in finding that Steven's relocation of himself and the minor children to Colorado was done in good faith.

With regard to the second prong, the best interest of the children, the trial court went through the twelve factors of La.R.S. 9:355.12, governing relocation, and determined that the relocation was in the best interest of the children. For example, with regard to La.R.S. 9:355.12(5), "[w]hether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party," the court reiterated its concerns about Chanda's ability to foster a relationship between the children and their father, while there was nothing to suggest that Steven had sought to limit the mother's visitation. With regard to factor number six, "[w]hether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity," the trial judge indicated that the schools seemed comparable, and that the father's opportunity for promotion was a positive. While the trial court may not have always articulated its conclusions regarding the relocation factors with great precision, its ultimate conclusion to approve the relocation was very well-founded.[1]

---

[1]§ 355.12. Factors to determine contested relocation

    A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:

    (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

    (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

More specifically, the best interest of the children was a factor when earlier determining the custody issue under La.Civ.Code art. 134. When determining the relocation issue under La.R.S. 9:355.12, and also under La.R.S. 9:355.13, the burden of proof statute pertaining to relocation, the best interest of the children, is also a factor.  Chanda complains that the court commented on a lack of change, as if the burden of proof was on Chanda to prove changes in circumstance for a custody change, which would have been error.  We disagree.  First, the trial court properly

_____

(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B.  The court may not consider whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.

7

went through the relocation factors in La.R.S. 9:355.12 and La.R.S. 9:355.13. Second, since Steven was *ordered* to transfer to Fort Carson, the court had to consider whether custody should remain with him or be changed back to Chanda. The court's having occasionally mentioned that it saw no change occurring between February 2008 (custody hearing) and August 2008 (relocation hearing) does not render its analysis faulty. While the trial court did not explore the custody issue at the relocation hearing, we note that the underlying custody change from Chanda, as domiciliary parent, to Steven, as primary custodial parent, was well-reasoned, and undoubtedly still fresh in the court's mind.

Dr. John Simoneaux evaluated both families in January and March of 2006, pursuant to the court's request. His report, after all evaluations were completed, included an analysis of the twelve factors of La.Civ.Code art. 134 regarding the "best interest" of the children. His concerns were many, and included the poor judgment exercised by Chanda in relating information to the children that they were too young and too emotionally fragile to absorb. In Chanda's interview with Dr. Simoneaux, she accused Steven of engaging in dangerous behavior and of being an alcoholic. However, Dr. Simoneaux found these remarks to be exaggerations or representations of youthful excess.

In Brenda Richardson's interview with Dr. Simoneaux, she disclosed stalking by Chanda, extreme mood shifts, calls to Brenda's supervisor's causing her problems at the school where she taught, calls to the MP's to drug search Steven and Brenda's house at one o'clock in the morning, finally culminating with Chanda's being banned from the post. Brenda reported that Chanda had gone to extremes to discredit her, her mother, and her father, and that Brenda and her mother had filed complaints because of the malicious lies told by Chanda.

8

Dr. Simoneaux was concerned particularly for the medical care that Chanda, who had a well-documented history of bipolar disorder, was providing to the girls. He characterized her as overly zealous and overly influential with the children's medical providers and social worker in Baton Rouge, resulting in inaccurate information and over-medication of the children. He described Chanda's emotional state as fragile and found most factors favoring Steven and Brenda Richardson as the primary custodial parents because they had a more stable family unit. Dr. Simoneaux's greatest concern was that Chanda, who "demonized" Steven, and who seemed incapable of change, actually created danger for the children and their welfare. Dr. Simoneaux stated that Chanda should be in therapy, and that if she would not give up the fight and try to encourage the children's relationship with their dad, then sole custody to Steven would be in order.

This evidence assisted the trial court in changing the primary domicile to Steven in February 2008, and it justified its statement at the relocation hearing in August 2008, that the court saw no reason to remove the children from the custody of their father and would, therefore, grant the relocation of the children to Colorado.

IV.

**CONCLUSION**

Based upon the foregoing, we find no abuse of discretion by the trial court in finding that the relocation of the minor children was in good faith and in the best interest of the children. Those determinations were reasonable based upon the record as a whole and will not be disturbed by this court. Accordingly, the judgment of the trial court is affirmed in its entirety. The costs of this appeal are to be borne by Chanda Richardson Lalonde.

**AFFIRMED.**

09-609

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

**CHANDA PRATHER RICHARDSON**
Plaintiff-Appellant

**VERSUS**

**STEVEN TODD RICHARDSON**
Defendant-Appellee

On Appeal from the Thirtieth Judicial District Court, Parish of Vernon, State of Louisiana, the Honorable Vernon Bruce Clark, District Court Judge, presiding.

# **O R D E R**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that motion be granted, removing from public view all information of the parties and their minor children that was sealed by the trial court and contained in this case.

THUS DONE AND SIGNED in Lake Charles, Louisiana on this 16th day of November, 2009.

_____
Judge
Third Circuit Court of Appeal