JUDE G. GRAVOIS, Judge.
| ;;The defendant, Sabrina Shantel Gad-dis, has appealed the trial court’s judgment denying her request for relocation of her minor child. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

Sabrina Shantel Gaddis (now known and referred to herein as “Mrs. Cage”) and Abel-Romeo Cueva, Jr. are the biological parents of the minor child E.C.,[1] who was born on June 12, 2006. They were never married to each other. By Consent Judgment rendered and signed on October 25, 2007, Mr. Cueva was declared to be the biological father of E.C. and agreed to pay child support and provide health and hospitalization insurance for the benefit of E.C.[2] No formal visitation agreement was entered into by the parties. Instead, they informally agreed to a shared custody |sarrangement between themselves, which included liberal visitation privileges to both of them.
Upon learning that Mrs. Cage possibly intended to relocate outside the State of Louisiana with E.C., on October 24, 2008 Mr. Cueva instituted this proceeding by filing a Petition for Custody, Visitation and Objection to Relocation of Minor Child. On January 14, 2009, Mr. Cueva and Mrs. Cage consented to a Judgment recommended by the hearing officer that awarded joint legal custody and shared physical custody of E.C. to both of them, and that named Mrs. Cage as the domiciliary parent of E.C. The only mention contained in this judgment concerning relocation is the following statement: “Neither parent shall move the residence of the child out of state or within the state at a distance of more than 150 miles from the other parent without giving the other party written notice as required by La. R.S. 9:355.1 et seq.”
On January 29, 2010, Mr. Cueva filed a second Objection to Proposed Relocation of Child, alleging that he had been verbally advised by Mrs. Cage that she intended to relocate to Glendale, Arizona with E.C., over his objection. In his Objection, Mr. Cueva stated that the proposed relocation is not in the best interest of E.C. for various reasons, including that the relocation would significantly reduce the amount of time that he spends with E.C., would affect the custody arrangement agreed to by the parties, and would preclude regular ongoing contact with E.C., particularly considering the cost of transportation and/or the time travel would entail. Mr. Cueva further alleged that, being in the military, Mrs. Cage’s husband is subject to additional relocation within the United States and/or possibly out of the country. Mr. Cueva also alleged in his Objection that the relocation would have a dramatic effect not only on the relationship between *1137 the father and child, |4but also between the child and his entire paternal family. Mr. Cueva requested an order prohibiting Mrs. Cage from relocating with E.C.
The parties appeared before a hearing officer who recommended against the relocation. Pursuant to Mrs. Cage’s objection to the hearing officer’s recommendation, a full hearing was held before the district judge.
At the hearing, Lucilia Cueva, E.C.’s paternal great-grandmother, testified that she cared for E.C. on a daily basis from the time he was four months old until he was two, that she currently sees E.C. about every two weeks, and that she would be sad if E.C. was allowed to relocate.
Anna Cueva, E.C.’s paternal grandmother, testified that Mrs. Cage lived with her while she was pregnant with E.C., that her home is only about ten minutes away from Mr. Cueva’s home, which allows her to visit E.C. on a weekly basis, and that she and her extended family attend E.C.’s birthday parties, which have in recent years been held at Mrs. Cage’s mother’s home. She further stated that she would assist in caring for E.C. if the relocation was denied. In response to questioning by the court, Mrs. Cueva testified that her son is able to care for E.C.
Carla Cueva testified that she is married to Abel Cueva, and accordingly is E.C.’s step-mother. She and Mr. Cueva also have a son who is two years older than E.C. She was living with Mr. Cueva when E.C. was born. Mr. Cueva visited E.C. on a daily basis during the first year of his life. E.C. began having overnight visits with his father when he was one year old. Mr. Cueva takes care of E.C.’s daily needs and takes care of both boys when she is at work. Mrs. Cueva stated that there are no fights between Mrs. Cage and Mr. Cue-va regarding E.C.’s visitation schedule. She testified that she loves E.C. like a son and would be hurt if he moved away.
|fiMr. Cueva testified that he and Mrs. Cage decided to put E.C. in day care when he was two years old because Mrs. Cage had to miss work when his grandmother was unable to watch E.C. He explained that he and Mrs. Cage always worked out the visitation schedule and that E.C. was with him 50% of the time. He testified that he filed a petition for custody and visitation and to oppose relocation of E.C. in October of 2008 after Mrs. Cage informed him that her husband may be transferred to Arizona. This filing resulted in the January 14, 2009 judgment establishing the 50% physical custody arrangement between the parties. Mr. Cueva testified that when E.C. is scheduled to be with him, he sometimes leaves work early in order to pick up E.C. If the relocation is denied, he, his wife, or a nanny will pick E.C. up from school. E.C. is enrolled to attend school with his older brother in the fall. Mr. Cueva opposes the relocation because he tries to spend as much time as possible with E.C. and will not be able to see him on a regular basis if he is allowed to relocate. While admitting that E.C. has a good relationship with Mrs. Cage, he testified that there are no family or friends in Arizona. Mr. Cueva testified that he has lived in the New Orleans area for 24 of his 28 years, that he has a job here, and that he has no intention of relocating. In May of 2009, he moved to a home with a bigger yard so that his children would have a place to play. Mr. Cueva testified that according to his research, it would cost about $500-600 for him to spend a weekend to visit E.C. in Arizona, but admitted that Mrs. Cage told him she would pay these expenses. If the relocation is denied, he will allow E.C. to visit Mrs. Cage over the summer, for extended holidays and weekends, and will allow visitation when Mrs. Cage visits the New Orleans area. Even when Mrs. Cage is not here, he would *1138 allow E.C. to have visitation with Mrs. Cage’s family.
IfiTimothy Cage, Mrs. Cage’s husband, testified that he has been involved in E.C.’s life since E.C. was one year old. E.C. has tubes in his ears and it was Mrs. Cage who always took E.C. to the doctor. He testified that upon relocation, Mrs. Cage would no longer work outside of the home. Mr. Cage stated that upon relocation, he would do everything he could to ensure E.C. maintains a relationship with Mr. Cueva and would try to obtain inexpensive lodging on the military base in Arizona where Mr. Cueva could stay when he would visit E.C. He would also pay for E.C. to visit Mr. Cueva during the summer. He explained that he has researched the schools in the district where he will be relocated, explaining that six of the top ten schools in Arizona are located in that district. He further explained upon his retirement, he wants to move to Texas because of the good school system there. Mr. Cage further testified that if E.C. were to be domiciled with him, according to his military benefits, E.C. would have 100% of his college tuition paid. On cross-examination, Mr. Cage stated that this educational benefit would be available even if he retired.
Cheryl Blackburn, who works with the family assistance program for the army, testified that there will be assistance for the Cage family when they relocate that will help them with finding schools, doctors and any special assistance needed for the family. Ms. Blackburn testified that she has known Mr. Cage since 2001 and that he is a good person.
Mrs. Cage testified that E.C. should not be denied relocation because it is not in the best interest of E.C.’s father. She acknowledged, however, that E.C. would not be able to see her family or his father’s family as much if relocation was allowed. She stated that she would always come back to Louisiana to visit because both she and her husband have family here. She testified that her aunt and cousins also planned to relocate to Arizona. On cross-examination, Mrs. Cage admitted |7that Mr. Cage was eligible for retirement but chooses not to retire for another five years, and that future relocations are almost certain; in fact they could be stationed back in the New Orleans area in a year.
At the conclusion of the hearing, the trial judge ruled against Mrs. Cage’s proposed relocation. This timely appeal followed.

LAW AND DISCUSSION

LSA-R.S. 9:355.12 sets forth the factors to be considered by the court to determine whether relocation should be allowed when the nonrelocating parent objects. These factors are:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelo-cating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or *1139 thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to [^improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
The parent seeking relocation has the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child. LSA-R.S. 9:355.13.
In his extensive oral reasons for judgment, the trial judge first found that the request for relocation was obviously in good faith. He then proceeded to discuss the statutory factors to determine if relocation was in the best interest of E.C. Considering the first factor, the trial judge stated that the child’s relationship with the family members as well as biological parents was “tremendous” and that all parties have great interest in the child and in his well-being. With regard to the second factor, the court found that the three-year-old child’s condition would improve from the relocation since there would be no day care. Noting that there was no expert testimony as to the child’s development or special needs, he found that the child’s needs are being met adequately. With regard to the third factor, the feasibility of preserving a good relationship with the nonrelocating parent, the court found that the testimony showed that the parties would have suitable visitation arrangements in place. He found factor four, the child’s preference, and factor five, the conduct of the parent seeking relocation, were not applicable given the particular facts of this case. With regard to factor six, whether the relocation would enhance the quality of life for the custodial parent and the child, the court [ ¡¡found that there is a better educational system and opportunities for the child if he relocated.
The trial judge did not read all of the other factors but specifically stated on the record that all the factors were considered, that he looked into the chronology of the events involving the child up to that point, and that he has considered the best interest of the child at that point. The court then denied the relocation stating that it was not in the best interest of the child to be taken away from the family members in the stable environment in which he currently resides. The court expounded that it took into consideration the extended family and balanced the equities of both parents and E.C. The court heaped much praise on both parents and their extended families for their past cooperation with each other and for their obvious desire to strongly support and be involved with this child. In addition to all of the other stated reasons for its judgment, the court stated, “But I do have serious reservations about relocation at this point in time for a minor child three years old away from what I *1140 consider to be a stable environment, which I consider to be the primary factor in the best interest of the child test as enunciated by Louisiana law.”
On appeal, Mrs. Cage argues that the trial judge committed legal error when he considered the statutory requirements for relocation and stated the stable environment was the “primary factor” in determining the best interest of the child as enunciated by Louisiana law, and ignored the benefits of relocation as required by LSA-R.S. 9:355.13.[3] For this reason, Mrs. Cage urges this court to conduct a de novo review in this matter. Mr. Cueva responds that there was no error of law, but rather the trial court made a factual determination as to the best interest of the | mchild, and as such, his ruling is subject to the manifest error/clearly wrong standard of review.
LSA-R.S. 9:355.12 mandates that the trial court consider the enumerated factors in reaching its decision regarding a proposed relocation. It does not require the court to give preferential consideration to any certain factor. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094. While a trial court is not required to specifically list each of the enumerated factors, the record must support that it considered the factors in light of the particular evidence presented. Leger v. Leger, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955. A trial court’s determination in a relocation dispute is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. Id. Further, a reviewing court may not set aside a trial court’s factual findings in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order for an appellate court to reverse the trial court’s findings: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court’s findings; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Richardson v. Richardson, 09-609 (La.App. 3 Cir. 11/18/09), 25 So.3d 203. On appellate review, if the trial court’s findings are reasonable based upon the entire record, the reviewing court may not reverse even if it is convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. Id.
Mrs. Cage asks this court to isolate one statement by the trial judge made in his lengthy reasons for judgment that his decision was made because he gave more weight to the current stable environment of the child than the other enumerated factors to find that the relocation was not in the best interest of the child. While |nthe record is clear that the trial court did make such a statement, the reasons taken as a whole indicate that he considered all of the required factors and balanced them to make a determination as to the best interest of E.C. This finding is clearly supported by the testimony at the hearing. This testimony clearly established that E.C. has a very close relationship with his father and several members of his father’s and mother’s extended family, and that removal to Arizona will place E.C. at such a distance from Mr. Cueva and all of the child’s significant extended family that their contact will be irregular and sporadic. The separated family will lack the proximity necessary for development of true familial relationships. Even *1141 Mrs. Cage expressed concern that the relocation would not allow E.C. to visit with her family and Mr. Cueva’s family as frequently. While Mrs. Cage testified that her aunt and cousins would also be relocating to Arizona, we note that there was no testimony from anyone in Mrs. Cage’s family to support this, or to explain how they could assist in maintaining E.C.’s relationship with his father and his father’s family if relocation were allowed.
Additionally, the evidence also showed that Mrs. Cage to a certain extent has a choice of moving. She plainly testified that her husband is able to retire but chooses not to do so at this time, and that upon Mr. Cage’s retirement the couple plans to move to Texas. While there was testimony as to the superiority of the educational system in Arizona as compared to the school E.C. was scheduled to attend at the time of the hearing, there was testimony from Mr. and Mrs. Cage that if they were to stay here, they would pay for E.C. to attend a private school. There appears to be no reason why they could not pay for E.C. to attend a private school in the New Orleans area even if they relocate.
Further, there was testimony that the move to Arizona is not permanent due to the nature of Mr. Cage’s job in the military. Thus, although relocation to |,2Arizona may enhance E.C.’s education in the immediate future, there is no indication as to how long the Cages would be in Arizona.
Mrs. Cage argues that the trial court failed to consider the benefits E.C. will receive because of the relocation, these being a better education and Mrs. Cage’s ability to stop working outside of the home. We find little merit to this argument. The transcript indicates that the trial judge was well aware of these benefits, but in balancing all of the enumerated factors found that the proposed relocation was not in the best interest of E.C. There is a reasonable factual basis for this finding in the record, and there is nothing in the record to show that this finding is clearly wrong.

CONCLUSION

Our thorough review of the record as a whole convinces us that the trial judge did not abuse his discretion in determining that relocation was not in the best interest of the child. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED

CHEHARDY, J., dissents with reasons.

. We designate the child by his initials in this opinion to protect his privacy. See La. S.Ct. Rules, Rule XXXII, Section 3.

. This Consent Judgment was rendered in the proceeding entitled "State of Louisiana, et al versus. Abel Romeo Cueva, Jr.,” No 2007-13885 of Domestic Relations Section 2, Civil District Court, Parish of Orleans, State of Louisiana.

. LSA-R.S. 9:355.13 provides, in pertinent part: "... In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from the enhancement in the relocating parent’s general quality of life.”