STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-537

DAWN CHERYL PEREZ

VERSUS

OSCAR G. PEREZ

*******************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 76,796-C
HONORABLE JAMES R. MITCHELL, DISTRICT JUDGE

*******************

JAMES T. GENOVESE
JUDGE

*******************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

Keaty, J., dissents and assigns written reasons.
Cooks, J., dissents for the reasons assigned by Judge Keaty.

AFFIRMED.

E. Grey Burnes Talley
711 Washington Street
Post Office Box 650
Alexandria, Louisiana 71309-0650
(318) 442-5231
COUNSEL FOR PLAINTIFF/APPELLANT:
    Dawn Cheryl Perez

**Bradley O. Hicks**
**Dowden & Hicks, L.L.P.**
**116 East Lula Street**
**Leesville, Louisiana 71446**
**(337) 238-2800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Oscar G. Perez**

**GENOVESE, Judge.**

In this domestic matter, the mother appeals the trial court's designation of the father, her former husband, as the domiciliary parent of their two sons and permitting him to relocate the minor children's residence to Texas. For the following reasons, we affirm the judgment of the trial court in its entirety.

## FACTS

Dawn Cheryl Petersen married Oscar Guevara Perez on May 22, 1999. Two children were born of the marriage, Oscar Guevara Perez, Jr. (born April 2, 2000), and Sebastian Chong Perez (born May 28, 2001). The parties were divorced on June 25, 2007. No custody orders were issued by the trial court. Rather, by agreement of the parties, the children lived with Dawn in Leesville, Louisiana, while Oscar continued his employment in Iraq.[1]

In March of 2007, the two children began living with their paternal grandmother in Oscar's home, also located in Leesville, Louisiana. When Oscar returned from Iraq in November 2007, his mother moved out of his house, and Oscar moved back into his home along with his two children. The children have continued to reside with Oscar since his return from Iraq.

In 2008, Dawn sought employment in Iraq. Her employment began in November of 2008, and was expected to continue through November of 2010.[2]

During 2008, Oscar met Marie Perez. In February of 2008, Marie and one of her sons[3] moved into Oscar's home along with Oscar and his children. Oscar and Marie got married at the end of April, 2008. In 2009, Oscar moved to Conroe, Texas. For the remainder of the school year, Marie and the children moved into

---

[1] Oscar was employed as a heavy equipment foreman in Iraq for approximately four years.

[2] According to her testimony, Dawn actually returned from Iraq in April of 2010.

[3] Marie's oldest son lived with his biological father in Pearland, Texas. He, too, later came to live with Marie, Oscar, and Oscar's children for a period of time.

Oscar's mother's home, and Marie and the children commuted to Conroe on the weekends to be with Oscar.

In December of 2009, while Dawn was in Iraq, Oscar sent her notice of his intention to relocate the residence of the children to Texas. Dawn filed an objection to the relocation on January 8, 2010. The trial court issued a temporary restraining order prohibiting the relocation, set a hearing date for the injunction, and appointed Dr. John Simoneaux to perform psychological evaluations. On May 20, 2010, the trial court dismissed the injunction. Oscar then relocated the children to Texas.

Trial in this matter began on September 23, 2010, and resumed on October 7, 2010, for the taking of Dr. Simoneaux's testimony. After taking the matter under advisement, the trial court issued Written Reasons and signed a Judgment on Rule and Implementation Plan for Joint Custody granting the parties joint custody, designating Oscar as the domiciliary parent, and permitting the relocation of the children to Texas. Dawn appeals.

## ASSIGNMENTS OF ERROR

On appeal, Dawn asserts that "[t]he trial court erred in making Oscar Perez the domiciliary parent of the minor children." Additionally, she contends that "[t]he trial court erred in permitting Oscar Perez to relocate the minor children's residence to Texas." The trial court's ruling on joint custody was not appealed.

## LAW AND DISCUSSION

*Domiciliary Status*

In designating the domiciliary parent for purposes of a joint custody determination, the best interest of the children is paramount. In making this determination, a trial court is guided by La.Civ.Code art. 134, which provides as follows:

2

The court shall consider all relevant factors in determining the best interest of the child.  Such factors may include:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

After hearing the evidence in this case, the trial court issued Written Reasons wherein he concluded that "[i]n carefully considering all of the factors of Article 134 and the testimony of the parties, it appears that the best interest of these children would be served by allowing them to stay in the environment that they are now enjoying."  The trial court noted that the children have been in Texas, where they are enrolled in school and doing well.  "Both are making good grades and are

happy with their situation." They reside, along with their father, step-mother, and her son, in a four-bedroom home. The children also "have a very good relationship with their step-mother." The family attends church and both children have been baptized.

On the other hand, Dawn's future, including her employment and her living arrangements, are much more uncertain. She is currently living with her sister's family and, while she is a student at Northwestern State University, she is not employed. Additionally, the trial court noted that Dawn was in a relationship and testified that she will probably marry a man who lives in Lufkin, Texas. Although she testified that she hoped to remain in Louisiana, that was dependent on job opportunities.

We also note the trial court's decision not to adopt the opinion of Dr. Simoneaux. Dr. Simoneaux testified in detail at trial, being questioned by both counsel as well as the trial court judge. The trial court's Written Reasons confirm that Dr. Simoneaux's opinion was carefully considered. However, the trial court expressly noted that it did "not feel that Dr. Simoneaux was apprised of some important facts that may have changed his opinions and cannot follow his recommendations."

Although relevant, a trial court has much discretion in determining the weight to be given expert testimony, and it is free to accept or reject the opinion expressed by any expert. *See Dooley v. Dooley*, 10-785 (La.App. 3 Cir. 2/2/11), 55 So.3d 985. This is particularly true when, as in the instant matter, the expert is not apprised of all the relevant facts. In this case, it is noteworthy that although he expressed the opinion that the children should remain in Vernon Parish, Dr. Simoneaux had not interviewed the parties for approximately five months before the hearing, and he admitted that he did not revisit this case since that initial

4

interview occurred. Dr. Simoneaux, also, was not present in the courtroom during the first day of trial when all of the other witnesses testified.[4]

We find that the trial court's consideration of the relevant factors set forth in La.Civ.Code art. 134, as expressed in its Written Reasons, are reasonably supported by the record. Therefore, we find no error with the trial court's best-interest determination or its designation of Oscar as the domiciliary parent.

***Relocation to Texas***

This court, in *Cass v. Cass*, 10-327, pp. 3-4 (La.App. 3 Cir. 11/17/10), 52 So.3d 215, 218-19, *writ denied*, 11-178 (La. 2/25/11), 58 So.3d 460, recently stated the following relative to issues of relocation:

> A parent seeking relocation must prove two things: (1) that the proposed relocation is in good faith and (2) that the proposed relocation is in the best interest of the child. La.R.S. 9:355.13. Louisiana Revised Statutes 9:355.12 enumerates factors the trial court shall consider in deciding a contested relocation, as follows:
>
> > (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.
> >
> > (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
> >
> > (3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
> >
> > (4) The child's preference, taking into consideration the age and maturity of the child.
> >
> > (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

---

[4] Dr. Simoneaux had been provided with a transcript of the trial testimony of Oscar.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

This statute mandates that the trial court consider the enumerated factors; however, it does not require the court to give preferential consideration to any certain factor. *Curole v. Curole*, 02-1891 (La.10/15/02), 828 So.2d 1094. A trial court's determination in a relocation dispute is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. *Id.* Further, a reviewing court may not set aside a trial court's factual findings in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the trial court's findings: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's findings, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Richardson v. Richardson*, 09-609 (La.App. 3 Cir. 11/18/09), 25 So.3d 203, citing *Mart v. Hill*, 505 So.2d 1120 (La.1987). On review, if the trial court's findings are reasonable based upon the entire record, the reviewing court may not reverse even if it is convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. *Id.*

As this court has noted, La.Civ.Code art. 134 "supplements and to a great extent overlaps with La.R.S. 9:355.12." *Miller v. Miller*, 01-356, p. 5 (La.App. 3 Cir. 10/31/01), 799 So.2d 753, 756. In the instant matter, as with the issue of domiciliary status, we find that a reasonable factual basis exists for the trial court's ruling on the issue of relocation. Without a recitation of the facts relative to each factor delineated in La.R.S 9:355.12, we find no manifest error in the trial court's determinations. Considering the evidence in the record, we find no abuse of the trial court's discretion in concluding that the evidence weighs in favor of relocation of the children to Conroe, Texas, with Oscar.

The extent of involvement and the duration thereof of the children's relationship with their father is significant. Even while in Iraq, Oscar maintained communication with his children. Curiously, for reasons not explained in the record, beginning in March of 2007, while Oscar was still in Iraq, instead of remaining with Dawn, the two children went to live with Oscar's mother until he returned in November, 2007. Upon Oscar's return, the children resided with him, which they have continued to do to date. The ability of preserving the relationship of the children with their mother is feasible despite some distance between the parties. Although Oscar did not historically and actively promote the relationship between the children and their mother, leaving that to a great extent to her to initiate or for the children to request, he did not thwart that relationship. The overall impact of the relocation on the children has been positive, and the quality of life that the children enjoy in Conroe has been established.

Perhaps most importantly, the stability which a life in Conroe provides for the children is very significant. They reside in a four-bedroom home with their father, stepmother, and her son. Marie does not work and cares for the children after school. Their father works and is home every evening, helping with

7

homework and playing with the children. The children are doing well in school and even showing more of an interest in school. Moreover, they have, in fact, been in this stable and positive environment since May of 2009.

To the contrary, allowing the children to reside in Leesville would not provide the same stability and is replete with unknowns. Dawn currently resides with her sister and her family. Dawn testified that she would "get her own place" if the children were to reside with her; however, she provided no details, and she has no income. Although Dawn is a full-time student, her education and employment future remain completely uncertain. Further, Dawn testified that she was in a relationship with a man who resided in Texas and that she anticipated that they would get married. Even if these plans came to fruition, Dawn was unable to say with any reasonable degree of certainty whether they would reside in Texas or in Louisiana, that being dependent on future employment opportunities.

Finally, this court again acknowledges the opinion expressed by Dr. Simoneaux that the children should remain in Leesville. However, Dr. Simoneaux had performed his interviews and evaluation of these parties approximately five months before the hearing. He had not performed any further evaluations since the children had moved to Texas, and circumstances had already changed considerably. Additionally, Dr. Simoneaux was not present in court on the first day of the hearing to hear and consider the evidence and testimony of all the other witnesses. At the time he provided his testimony to the trial court, Dr. Simoneaux had only been provided with Oscar's testimony from the first day of trial. Thus, it is clear that Dr. Simoneaux did not have all of the current relevant facts available at the time that he reiterated his initial opinion on the second day of trial.

For the foregoing reasons, considering the evidence of record, we find that the trial court did not abuse its discretion in designating Oscar as the domiciliary parent of the two minor children. Likewise, we find no abuse of the trial court's discretion in permitting the relocation of these children to Texas.

## **DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. The costs of this appeal are assessed to Plaintiff/Appellant, Dawn Cheryl Perez.

**AFFIRMED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-537

DAWN CHERYL PEREZ

VERSUS

OSCAR G. PEREZ

**KEATY, J., dissenting.**

In its judgment on relocation, the trial court allowed a father, who had already moved his children out of state without permission from the court and in obvious disregard of their mother's objection, to change the children's residence to Texas. The trial court analyzed the facts of this case pursuant to the incorrect statute and ignored the recommendation of its appointed expert. The majority opinion, which affirms the trial court's judgment, fails to utilize the appropriate standard of review. Together, these rulings create legal precedent that is in direct conflict with existing relocation law and jurisprudence. To the detriment of Louisiana families, this new precedent will be relied on in the future to support the propositions that a parent need not prove that the relocation is in the best interest of the children nor obtain permission from the court before physically moving the children. For these reasons, and the ones that follow, I respectfully dissent.

### Relocation

Relocation is governed by La.R.S. 9:355.1-.17. In La.R.S. 9:355.12, the legislature enumerated twelve factors to be considered by trial courts when determining whether relocation should be granted. Although similar to La.Civ.Code art. 134, which sets forth factors for determining the best interest of children in custody cases, the two statutes are not identical. "A court commits

1

legal error when it fails to consider the factors for relocation and instead completes an evaluation of the best interest of the child under La. C.C. art. 134." *Smith v. Smith*, 44,663 p. 18 (La.App. 2 Cir. 8/19/09), 16 So.3d 643, 654. In *Gathen v. Gathen*, 10-2312, p. 1 (La. 5/10/11), 66 So.3d 1, 2, the supreme court stated, "La. R.S. 9:355.12 mandates that the trial court consider all twelve factors listed in La. R.S. 9:355.12." Failure to consider the factors set forth in La.R.S. 9:355.12 is a "prejudicial legal error that materially affect[s] the outcome [of the case] and deprive[s] a party of substantial rights." *Johnson v. Spurlock*, 07-949 p. 7 (La.App. 5 Cir. 5/27/08), 986 So.2d 724, 728.

In its written reasons for ruling, the trial court stated,

> In carefully considering all of the factors of Article 134 and the testimony of the parties, it appears that the best interest of these children would be served by allowing them to stay in the environment that they are now enjoying. Therefore, this Court will allow the relocation of the children to their father's home in Conroe, Texas[.]

Because the trial court did not consider the proposed relocation in light of the factors set forth in La.R.S. 9:355.12, and instead relied on the factors enumerated in La.Civ.Code art. 134, the trial court committed legal error, and its decision should be reviewed *de novo*. The majority opinion employed an incorrect standard of review when it reviewed the trial court's judgment for manifest error/abuse of discretion.

Relocation is a two-prong test, requiring that the relocating parent prove that the proposed relocation is made in good faith and that it is in the best interest of the child. La.R.S. 9:355.13. In conducting a *de novo* review, the record might support a finding that Oscar's proposed relocation was in good faith, as he moved to be closer to his wife's family. Oscar's actual relocation, however, should be considered bad faith, as he moved the children to Conroe without permission from the Court and against Dawn's objections. Further, despite Dawn's attempts to

2

obtain an injunction prohibiting him from doing so, he enrolled the children in school in Conroe before the issue of relocation could be adjudicated and without the necessary temporary permission from the court pursuant to La.R.S. 9:533.5 and La.R.S. 9:355.10.

Even if Oscar is given credit for meeting the first prong of the relocation test, he still bears the burden of proving that the relocation is in the best interest of the children. To determine whether a parent has met its burden of proving that the relocation is in the best interest of the child, "the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life." La.R.S. 9:355.13. Additionally, La.R.S. 9:355.12(A) requires a court to consider twelve enumerated factors before reaching a decision regarding a proposed relocation. Section B of La.R.S. 9:355.12 prohibits the court from considering "whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed."

The twelve factors that a court must consider before making a decision on relocation are:

(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

La.R.S. 9:355.12(A).

In conducting a *de novo* review of the case, each factor should be considered before determining whether relocation is in the best interest of the children. Although each factor must be considered, courts are not required to give preferential consideration to any certain factor or factors. *H.S.C. v. C.E.C.*, 05-1490 (La.App. 4 Cir. 11/8/06), 944 So.2d 738. Accordingly, I will only address the factors that I think weigh in favor of, or against, the proposed relocation. Paramount in my review is the opinion of Dr. John Simoneaux, the court's appointed expert. Although the trial court determined that it could not follow his recommendations because it felt that Dr. Simoneaux had not been apprised of some

4

key changes since he initially met with the parties, Dr. Simoneaux had been given a copy of the transcript from the first day of trial, which is the only day that he missed. Accordingly, he was aware of any new developments that had been presented during trial. After reviewing it, he testified that his opinion on the proposed relocation and custody of the children remained unchanged.

A "trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence." *Smith*, 16 So.3d at 653. "The weight given expert testimony is dependent upon the experts' professional qualifications and experience and the factors upon which the opinions are based." *Id*. "Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole." *Id.*

The trial court chose to ignore the opinion of Dr. Simoneaux, its court-appointed expert, claiming that he had not been apprised of certain new developments. Dr. Simoneaux testified that he had been given a transcript from the first portion of the trial and had reviewed it, and his opinion would not change. Dr. Simoneaux met with Dawn, Oscar, their children, and Marie, Oscar's new wife. He performed various diagnostic tests on the parties in addition to interviewing them. His report to the court and the recommendations he makes are drawn from the test results and his interviews with the parties. Dawn's test results were valid. Dr. Simoneaux determined that although Dawn had made mistakes in her past, she was honest about them, was the more stable parent, and would be most likely to foster a relationship with the other parent. Conversely, he found that Oscar and Marie's test results were invalid, that they tried to present themselves as perfect, that their statements were inconsistent, that neither of them was likely to foster a relationship between the children and Dawn, that the relocation was more

5

likely for their best interests than the children's, and that the relocation "would severely compromise the children's relationship with their mother." Given the amount of time he spent with the parties individually and the interviews and tests he conducted, he proposed that if the parties lived in the same town, Dawn should be domiciliary parent, and the parties should split custody 50/50. He opposed the proposed relocation.

After reviewing the record, I find nothing to support the trial court's substitution of its own common sense and judgment for that of Dr. Simoneaux, and I propose that the trial court's failure to give credence to Dr. Simoneaux's recommendations was erroneous. In continuing with the *de novo* review of the record, factors one, two, three, five, six, seven, eleven and part of factor twelve weigh against relocation. A second part of factor twelve weighs in favor of the relocation. Because the majority of the factors weigh against relocation, Oscar should have been prohibited from relocating the children's residence to Texas.

Factor one of La.R.S. 9:355.12 requires the court to look at the children's history with each parent and their relationship with other significant persons in the children's lives. The boys, who were nine and ten when the matter was tried, had lived in Leesville for their entire lives. Their maternal grandparents and paternal grandmother also lived in Leesville, as well as extended family members including aunts, uncles, and cousins. They often visited their maternal grandparents, and lived, on two separate occasions, with their paternal grandparents.

There is no indication that the children lived with anyone other than their parents while they were young. For four years, beginning in 2003 and ending in November 2007, Oscar worked in Iraq. He was given leave every four months. From the time Oscar left until March 2007, the children lived with Dawn. From March 2007 until November 2007, the children lived in their home with Oscar's

6

mother. Upon his return in November 2007, the children resided with Oscar, and at some point, Marie moved in with them. In late 2009 or early 2010, Oscar moved to Conroe. Marie and the children lived with his mother during the school week and commuted to Conroe on the weekends until school let out in May, at which time Marie and the children moved permanently to Conroe. In Conroe, the children live with Oscar, Marie, and Marie's son. There has been some friction between the Perez children and Marie's son. Oscar works long hours, from early in the morning until late in the evening and nearly all of the parenting is done by Marie. Other than their father, the children do not have family in Conroe. In contrast, the children have an extensive network of family members in Leesville who have been actively present for the entirety of their lives, and who have also stepped in as temporary caretakers for the children. Accordingly, this factor weighs against relocation.

Factor two requires the court to consider the age and needs of the child and the impact the relocation will have on the children's physical, educational, and emotional development. Dr. Simoneaux noted that the boys had lived with Oscar for the majority of the three years prior to his interview with them, and they had significant behavioral and emotional difficulties, which was "particularly troublesome" to Dr. Simoneaux. He found that the boys long for a relationship with their mother and that the proposed relocation would severely hinder that relationship. Accordingly, this factor weighs against relocation.

Factor three requires the court to consider the feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements. In his report to the court, Dr. Simoneaux opined that the relocation "would severely compromise the children's relationship with their mother." Dawn asserted that, when on a sixteen-day leave, she was only allowed

7

to see the boys four days and that she was not given any significant time with the boys during the summer. She asserted that although she encouraged the boys to send their dad letters and cards while he was in Iraq, he did nothing to encourage them to communicate with her. Oscar did not prove otherwise. Accordingly, this factor weighs against relocation.

Factor number five requires the court to consider the parent seeking relocation's history in either promoting or attempting to thwart the relationship of the children and the nonrelocating parent. As previously discussed, Oscar has done little to nothing to facilitate a relationship between Dawn and her children. Accordingly, this factor weighs against relocation.

Factor six requires the court to determine whether the relocation will enhance the general quality of life for the relocating parent and the children, including, but not limited to, financial, emotional, or educational benefits. Oscar's move to Conroe was a lateral one. Although the family currently lives in a four bedroom house, we do not know how this home differs from the one the family lived in in Leesville. Oscar makes $45,000 per year, and his is the only source of income. The record does not contain evidence that Oscar or the children have benefitted from the move, financially or emotionally. Rather, the record seems to support the conclusion that, at least emotionally, the relocation will be harmful to the children. Evidence was not introduced to support a proposition that the Conroe schools provide a more advantageous educational opportunity to the boys than the Leesville school. This factor weighs against relocation.

Factor seven requires the court to consider the reasons of each parent for seeking or opposing the relocation. Oscar sought relocation because he wanted to be closer to Marie's family and his best friend. The move was not mandated by his employer and was not the result of a promotion. Dawn opposes the relocation

8

because she won't be able to be involved in the children's lives on a daily basis, and it will be a struggle to foster a close and continuous relationship with them, given Oscar's predilection to thwart those attempts. Further, the boys will be removed from their extended family and from their school and friends. This factor weighs against relocation.

Factor eleven requires the court to consider any history of substance abuse or violence by either parent, including the severity of that conduct and the failure or success at any rehabilitation attempts. Oscar has a history of perpetuating violence against Dawn. At one point, he wrapped a towel around her neck and dragged her to the bathroom, placed her near the bathtub, and began choking her. This violence was corroborated by statements Marie made to Dr. Simoneaux. The record lacks evidence that Oscar has enrolled in a rehabilitation program. The statute requires the court to consider *any* history of violence by either parent. There is a history of violence by Oscar, and the record does not contain evidence that he has done anything to rehabilitate himself. Accordingly, this factor weighs against relocation.

Factor twelve allows the court to consider any other factor affecting the best interest of the child. I suggest that there are two factors that need to be considered here: Dawn's relinquishment of physical custody of her children to Oscar's mother and her subsequent move to Iraq, and Oscar's relocation of the children to Conroe without court approval.

Admittedly, Dawn handed custody over to Oscar's mother in March 2007. Oscar's mother cared for the boys from March 2007 until November 2007, at which time Oscar returned home and began caring for the boys. Dawn began working overseas in November 2008 and returned home in the Spring of 2010. Her actions certainly do not depict those of a stable, caring mother who put her

9

children's best interests before her own wants or needs. However, she did terminate her employment contract nearly a year early so that she could return to Leesville and actively participate in the children's lives. In her evaluation with Dr. Simoneaux, he found her to be honest about her past and her mistakes and remorseful about her actions. Regardless, at the time the relocation was proposed, Dawn was working overseas and had relinquished custody of her children twenty months before taking the overseas assignment. This factor weighs in favor of relocation.

The final factor that needs to be addressed is the fact that Oscar moved the children to Texas and enrolled them in school without permission from the court. La.R.S. 9:355.5 mandates judicial permission before a parent can relocate with a child if the nonrelocating parent objects to the proposed relocation. Oscar showed flagrant disregard for the law when he moved the boys to Conroe and enrolled them in school there, absent court permission. This factor weighs against relocation.

Having considered all and analyzed the relevant factors in La.R.S. 9:355.12, it is clear that the proposed relocation was not in the children's best interests. Accordingly, Oscar failed to prove the second prong of the two-part relocation test, and the relocation should be denied. The boys should be returned to Leesville.

**Custody**

I do not think that the issue of custody, domiciliary status, and implementation of a joint custody plan was properly before the court. In the objection to relocation, Dawn sought an injunction prohibiting Oscar from relocating the children before a hearing and evaluations by a court-appointed expert. Although she prayed that Oscar not be allowed to relocate the children to Texas, she did not pray for a determination of custody, including the establishment

10

of a domiciliary parent. Oscar did not file a reconventional demand to establish custody. "'[N]othing in the article [art. 862] is intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it.' Otherwise, '[a] judgment beyond the pleadings is a nullity.'" *Domingue v. Bodin*, 08-62, p. 3 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (citations omitted). For these reasons, I would find that the portion of the judgment determining custody is null.

Louisiana law, however, allows a court to address issues not raised by the pleadings when those issues were tried by the express or implied consent of the parties. La.Code Civ.P. art. 1154. In those situations, the issue "must be treated in all respects as if the issue had been raised by the pleadings." *Wexler v. Martin*, 367 So.2d 111 (La.App 4 Cir. 1979). If one were to determine that the issue of custody had been tried with either the express or implied consent of the parties, then a determination of custody might be appropriate in the instant case.

If La.Code Civ.P. art. 1154 is determined applicable in the instant case, the portion of the judgment granting Oscar domiciliary status should be reversed. The domiciliary parent is the parent with whom the child resides most of the time. La.R.S. 9:335. A new order should be issued granting domiciliary status to the parent living in Leesville. If both parents live in Leesville, the court should rely on Dr. Simoneaux's report and award domiciliary status to Dawn or order that the parties submit for a new evaluation for use in a custody determination.

The majority opinion affirms a trial court judgment that relied on the wrong statute to reward a father who failed to comply with Louisiana relocation laws before moving his children to Texas and who failed to meet both prongs of the two-part relocation test at hearing. In applying the wrong standard of review, manifest error rather than *de novo*, the majority opinion affirms the trial court's

11

travesty of a judgment. The majority opinion creates divergent jurisprudential precedent that will have destructive effects on Louisiana relocation law, as it will be relied on in the future as proof that a party need not obtain judicial permission to change a child's residence, either temporarily or permanently, as required by La.R.S. 9:355.5 and La.R.S. 9:355.10, and that a party seeking to relocate need not prove both prongs of the two-part relocation test: good faith and the best interest of the child as determined by La.R.S. 9:355.12-.13. If these permissions and determinations were not of the utmost importance and instead were simply to be established by the whim and fancy of any parent wanting to change his child's residence, the legislature would not have made them law. It pains me to think about the pernicious effects this opinion will have on our relocation laws. For the reasons I have set forth, I respectfully dissent.